LILLIE C. POMEROY, GEORGE S. POMEROY, JR., AND ROBERT G. BUSHONG, EXECUTORS OF THE ESTATE OF GEORGE S. POMEROY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29664. Promulgated October 27, 1931.

*R. M. Heth, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

## OPINION.

Goodrich: The net income of the business conducted under the name of Dives, Pomeroy & Stewart for the period from September 21, 1922, the date of Dives' death, to June 30, 1923, the closing business day before the agreement between Pomeroy and the executors of Dives' estate became effective, was $552,671.47. We are asked to make an allocation of these earnings between the estate of the deceased partner and the survivor, not for the purpose of distributing the money, but to fix the basis upon which the tax liability resulting from the receipt of or the right to receive the money may be determined.

Petitioners contend that these earnings should be divided equally between these parties, for the reason that a partnership, with division of the earnings thereof upon an equal basis, existed between them during this period. In support of this contention it is urged that the agreement of March 30, 1903, discloses an intention that the business should be continued as an equal partnership until a settlement of the interest of the deceased partner could be effected by one of the methods set forth therein; that respondent is bound by statements made in the reports of his revenue agents treating the business as a partnership during this period and stating that it terminated upon the operation of the agreement of April 23, 1923; and that *Hellman* v. *United States*, 70 Ct. Cls. 498, is controlling of the case at bar and requires that the tax returns filed by Pomeroy reporting the business during this period upon the basis of an equal partnership must be accepted as correct.

With this contention we can not agree. The partnership between Dives and Pomeroy was terminated by Dives' death. The contract of March 30, 1903, provided various methods by which a settlement of his interest in the partnership might be effected, but as to the division of earnings between the date of death and the date of settlement it was silent. While the agreement contained no express provision permitting the survivor to continue the business after the death of his partner, the implication was that the business should be continued until the deceased's interest could be settled, since it was stated that one of the purposes of the contract was to obviate " interruption to business." But the fact that the operation was to be continued does not mean that the division of earnings should con-

tinue on the same basis as before. The agreement contains no provision entitling the estate of the decedent to a portion of the profits during the period from his death to the settlement of his interest. At the time the agreement was reached, the partners easily could have provided for the distribution of profits during this period, but they did not do so. We can not now write into the contract such a provision for them, nor can we, by inference, set up a partnership between the survivor and the estate of the deceased partner when the contract failed expressly so to do. As we read that agreement, it is purely a contract for the acquisition by the survivor of the interest of his deceased partner, giving a choice of terms, conditions and methods of acquisition, and we find therein nothing to show that the parties intended that earnings subsequent to the death of one partner should be divided upon an equal basis, as petitioners contend. Moreover, that contract was expressly nullified by the agreement of April 23, 1923.

We attach no importance to petitioner's argument that the statements made in the revenue agent's report relative to the termination of the partnership are controlling of this case. The rule that the conclusions of law of the revenue agent are in nowise binding upon respondent or upon this Board is too well established to merit citation or further discussion.

Petitioners' position is not sustained by the opinion of *Hellman* v. *United States, supra.* In that case the Commissioner of Internal Revenue sought to change the amounts chargeable as distributable income to the various members of a partnership from that disclosed by the partnership books and the tax returns on the ground that, in the case of one partner, the amount so disclosed was in excess of the percentage to which that partner was entitled under the partnership agreement. The discrepancy not being explained by the evidence, the court held that his distributable share had been shown by the best evidence available and refused to deviate from the amounts reflected by the books and tax returns of the partnership. We have no such question in the case at bar.

There is no question but that the Dives estate had the right to some share of these earnings. It was entitled to an accounting, and a distribution of the partnership assets and earnings, and could have obtained the same in a court of equity had the parties been unable to agree upon a reasonable basis of division. But here the parties did agree upon such a division. We have no doubt that the court would be guided by an agreement between the parties and that, if the parties themselves were satisfied therewith, equity would be satisfied. We ask no better guide for ourselves in the solution of the problem before us. The contract of April 23, 1923, clearly provides,

*inter alia*, (1) that Pomeroy is to be paid $40,000 as compensation for his services as liquidating trustee and for conducting the business from the date of Dives' death to the date of settlement, and (2) that $176,250 is to be paid to the Dives estate " in full settlement of any claim  *  *  *  for profits accrued on the partnership business from the date of the death of said Josiah Dives." These items we regard as separate and distinct, believing that the language used indicates merely the method of payment and not that the former serves to reduce the amount of the latter. We see no reason for disturbing the division of profits which the parties themselves have made and carried out. Except for this $176,250, the profits accruing to the business during the period intervening between Dives' death and the settlement under the contract remained in the business, which was taken over by the corporation, controlled by Pomeroy. The transfer to the Dives estate of the stock of the Chantrell Hardware & Tool Company, the real estate used by that company, and the indebtedness of that company to the partnership, was a partial payment of the purchase price of the Dives interest. We are not here concerned with the price paid for Dives' interest in the business.

In accordance with our conclusions, the profits earned by the business during the periods September 20 to December 31, 1922, and January 1 to June 30, 1923, should be taxed to Pomeroy, except $176,250 thereof, which should be allocated to and deducted from the earnings during each of said periods in accordance with the ratio of earnings of said periods.

. Respondent, in his brief, urges that Pomeroy's taxable income be increased in the amounts of $51,316.88 for the period September 20 to December 31, 1922, and $84,933.12 for the period January 1 to June 30, 1923, on the ground that these amounts are interest, determined under clause 8 of the contract of April 23, 1923, and represented, not Dives' share of the profits of the business, but a part of the purchase price of the Dives interest therein, and are therefore not deductible from Pomeroy's income, under the authority of *Willard C. Hill et al.*, 14 B. T. A. 572. While we fully recognize the principle of that case, we think it is not here applicable. In the case at bar the computation of interest on the sum of $3,750,000 served merely as a method of determining the portion of accumulated earnings to be paid the Dives estate. The amount of $176,250 was not interest, nor a part of the purchase price of Dives' share of the partnership assets, but it was that portion of the accumulated earnings to which the parties agreed the estate was entitled.

Petitioners point out that by the deficiency notice Pomeroy is twice taxed upon the item of $40,000 paid him as compensation for his services as liquidating trustee and as salary for conducting the

business during the period intervening between Dives' death and the settlement of his interest, since it is included in the profits of the business allocated to him and again included in his "salaries, wages, etc.," which are a part of his gross income. This error should be corrected.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

MURDOCK, dissenting: The prevailing opinion holds that the Pomeroy estate is liable for tax on some income, but it does not disclose whether it holds that that income represents Pomeroy's distributive share of the income of a partnership, or his share of the income of a joint venture. The opinion permits the amount of taxable income for each year to be fixed retroactively by an agreement of the parties. This agreement was not intended to settle the rights of the parties to income as of the end of each year in question, but was a complete adjustment of their rights in the business. In my judgment, Pomeroy's tax liability for each year should be determined on the basis of and is fixed by his rights at the end of that year, and does not depend upon any subsequent agreement of the parties. The parties may give up certain rights under a subsequent agreement, but they can not retroactively change their tax liability.

MARQUETTE, SMITH, and STERNHAGEN agree with this dissent.

MATTHEWS, dissenting: The partners shared equally in the partnership profits, notwithstanding the fact that Dives' interest in the business was greater than Pomeroy's. In 1903, Dives' interest was $522,046.94 and Pomeroy's interest $444,552.99. At the death of Dives, his interest (net worth) in the business, as reflected on the books, was $2,697,499.47, while Pomeroy's interest (net worth) was $2,176,511.07, a difference of more than $500,000. These figures are taken from the exhibits which were attached to the stipulation and made a part of the findings of fact by reference.

Dives' interest passed to his estate on his death, and from that date until the settlement on June 30, 1923, the estate was entitled at least to the same proportion of profits of the business as Dives would have been entitled to had he lived, namely, one-half of the income arising from the business. The fact that the executors did not withdraw one-half of the profits or that one-half was not actually distributed to such executors, does not alter the situation. The earnings of the estate's share were constructively received by the executors.

Pomeroy had also constructively received his share, although we do not know whether he drew it out of the business or not. That Pomeroy and the Dives estate were each entitled to one-half the profits in the business is evidenced by the fact that Pomeroy so treated the income in partnership returns filed for the periods involved between the death of Dives and the settlement of the estate. I do not think it necessary to determine the legal term to apply to the relation between Pomeroy and the Dives estate during the period subsequent to Dives' death. Neither is it necessary to determine whether Pomeroy was required to file a return of the income of the business on a partnership form or on a fiduciary form in order to determine the issue in this case, which is, how much of the earnings of the business subsequent to Dives' death and prior to the transfer of the business to the corporation are taxable to Pomeroy. The earnings of the business during this period belonged to the owners, Pomeroy and the Dives estate, and I think that a division of the earnings in the same proportion that they were distributed prior to the death of Dives is all that the executors of Dives could have demanded, notwithstanding the fact that Dives' interest was greater than Pomeroy's. Pomeroy could certainly have demanded no more than one-half the earnings.

At the time of the settlement effected on July 2, 1923, the Dives estate had the right to a certain portion of the assets and also a claim for the profits earned on that interest subsequent to Dives' death. The claim of the estate for the profits accrued on the estate's interest was settled for $176,250, an amount of money equal to 6 per cent of $3,750,000 from the date of death of Dives to the date of settlement, and this amount of money was excluded from the assets of the partnership which both the Dives estate and Pomeroy joined in conveying to the corporation. I see nothing in the fact that the estate's claim for its share of the profits earned between the date of death of Dives and the date of settlement was, under the circumstances, settled for a less amount than one-half the actual earnings of the period, to justify the conclusion that at the time the income accrued the Dives estate had no claim to more than the amount subsequently agreed upon in settlement. The very language used in the agreement of settlement justifies the inference that the Dives estate had a claim for more than the amount agreed upon in settlement of the claim—" which said amount shall be paid to the executors in full settlement of any claim they may have for profits accrued on the partnership business from the date of death of Josiah Dives."

In my opinion, therefore, Pomeroy should not be taxed on more than one-half the earnings of the business during the period involved.